Bradley O'Connell representing petitioner repellent Lionel Rubalcava. On this record, including the instructions, the notion that these prior extrajudicial events were not considered and offered for their truth isn't just objectively unreasonable under 2254D. The notion borders on the absurd because there is absolutely no way the jurors could make any use of these purported events of recent history without assuming their truth. The instruction included a type-written addition to the usual form instruction on the expert testimony. That provided, naming the officer, identifying the officer by name, his testimony as to matters outside his personal knowledge is offered solely to support his expert testimony on gang practices and affiliations. Doesn't that happen with experts all the time? Your Honor, most experts either are not recounting information from core testimonial hearsay categories like prior trials or they are describing events that are otherwise proven. And let me make myself clear. I am not suggesting that the confrontation clause bars a gang expert from ever taking the stand. I am not suggesting that a gang expert can take the stand.  I am not suggesting that a gang expert can take the stand. I think this Court can and should rule narrowly on the basis of the record in this case. Well, let me ask you about the record in this case. And I want you to separate some things for me. As I understand it, part of the expert's testimony was, I've concluded he's a gang member because he told me so. That's not true, Your Honor. Well, because he said so. No, that actually is not true either. No, it is true. Now, the record indicates that your client sent a letter from jail that said... The letter from jail is and that's otherwise proven. So that's not a problem. And that he's told, and that in conversations with other people... With other officers. Other officers. Not the testifying officers. And admission, you know, admissible under the hearsay rules, he said to other officers, yes, I'm a gang member. Four words to that effect. So given all that, let's assume that part, at least part of the officer's testimony was introduced in violation of the confrontation clause. How can you meet your burden in a habeas case of showing prejudice? Because, Your Honor, the most critical information was not that he had some affiliation with WSM, of which there is other evidence. The most critical information on which the, I'm calling the omniscient narrator witness, is the only witness, is the putative back story to this particular shooting. Because otherwise, this shooting makes no sense. Not only... But let's put that in the context of a normal expert. A normal expert says, I learned the following facts. Perhaps testimonial hearsay, but I've learned it from other people. If these facts are true, then my opinion is that this crime was committed in furtherance of gang purposes, because given this background, my expertise tells me this was done for that reason. Why does that violate the confrontation clause? If that testimonial hearsay is not, if the subject of that testimonial hearsay is not otherwise proven, and if there is no way for the jurors to make use of that information without assuming the truth of those extrajudicial statements, that is a classic confrontation violation, not just under Crawford, but under the seminal case in confrontation jurisprudence that first applied to Clause of the States, Douglas versus Alabama, where the substance of a witness's out-of-court statement was communicated to the jurors during the prosecutor's attempt to question him on that statement. And the witness kept taking the fifth, but the prosecutor... But there, that statement was introduced for the truth of the matter. Here, the Supreme Court tells us, right or wrong, that when experts may rely on testimonial hearsay, as long as the hearsay is not being introduced for the truth of the matter. I have to disagree with Your Honor on that. I do not believe the Supreme Court has ever in a majority opinion addressed this. Now, what, in the context of an expert, what the Supreme Court has said in Crawford is that a recitation of a witness-relating testimonial hearsay will not violate the confrontation clause if it is offered for some purpose other than its truth. And that is a fact. Right. And the DNA case, the DNA case apparently stands for that proposition, too. The Court assumes that the lapse test was testimonial, at least for purposes of some of the justices, and they say even so, it's okay because an expert can rely on a testimonial hearsay in formulating an opinion as long as the jury is instructed that that hearsay is not to be taken for the truth of the matter. Well, as to Williams, actually a majority of the Court, five justices explicitly reject the notion that that information was coming in not for its truth. But even on the terms of the plurality opinion, there's no application here. But are we looking at the 2005 California decision? And at that time Crawford was in effect. Yes. And I'm glad Your Honor mentioned that because I'm not relying on the DNA case because it's too late in the game. I'm simply to the extent I'm discussing it is solely to rebut the State's suggestion that it somehow undercuts Crawford, which is what we're relying upon. If the California decision were post-Williams, there might be a different – that might be a different issue. If it were post-Williams, I'd be relying on Williams. Of course you would. Because five justices rejected this expert basis notion. But in 2005, what's your best case other than Crawford? Douglas. Douglas, Your Honor. But Douglas is not an expert case. You're great. No, it is not an expert case. But prior to 2005, is there any case in which the Supreme Court or this Court held that use of – an expert's use of hearsay violated the Confrontation Clause? As of 2005, I don't believe so because as the Court knows, Crawford in 2004 substantially reshaped Confrontation Law. It largely detached it from State hearsay law and stated that we cannot answer confrontation questions solely by looking to what various jurisdictions' contemporary hearsay laws are. Let me ask you a question. Oh, sorry. Judge, go ahead. Well, thank you. You said what you're primarily concerned about is the punitive backstory. Now, this expert covered quite a little ground. And what specifically is the punitive backstory that is your complaint? The backstory is the alleged prior incidents which he described as creating a murderous or potentially murderous feud between two Norteno subgroups, Westside and Vario Horseshoe. That was critical to the prosecution case because – In the furtherance of elements? Oh, much more than that, Your Honor. I'm – motive. This was a hotly contested case of identity in light of the very strong alibi evidence. Meanwhile, the crime itself didn't make any sense because the victim, Raymond, was a Norteno. He was wearing, displaying Norteno colors right at the time. And it is undisputed that my client did – was also a Norteno. In order for this case to make any sense, the testimony regarding hostilities between these two subgroups of Nortenos was absolutely essential. And we're talking not just generalities. We're talking about specific events, exactly the sort of things we need precipient witnesses for. Thank you, counsel. Your time has expired. Okay. Thank you, Your Honor. Thank you. We'll hear from the government. Am I correct? I do not have more rebuttal time? No, I'm sorry. Your side – the time for your side has been fully consumed. I understand, Your Honor. Thank you. Thank you, counsel. Thank you, Your Honors. And may it please the Court, Rene Antonio Chacon for California Deputy Attorney General for Respondent at Pele. Your Honors, this case was tried in 2003. The verdict came in three months before Crawford. And in this case, the court of appeal in 2005 applied Crawford. Well, let me ask you a question about that. What troubles me about the officer's testimony in this case is that one of the things he said was, I concluded he was a gang member based on the F.I. cards. Partly based on the F.I. cards. Partly about field investigation cards. And as to some of those, those were the conclusions of other officers that Mr. Rubla-Cava was a gang member. Well, other officers quoted him. Well, but they didn't always quote him, according to the record. It's not clear. That's right. Your witness says, I don't know how they arrived at that. Good police work would require putting down information from the defendant himself, but as to some of these, they're not as good as me, so I can't tell why they did it. Officer Nevis testified to that. Yes, sir. But I nonetheless rely on somebody else's opinion that he's a gang member. And that's to me that's troublesome because he's in effect channeling another expert. Another expert says, I conclude he's a gang member in the F.I. card. And the other, and what do you get in return? This expert gets on the stand and says, I conclude he's a gang member. Isn't that a Confrontation Clause problem? In 2003 or 2005, when the Court of Appeal dealt with this Crawford issue, again, the testimony came out unobjected to. There was no Sixth Amendment claim in front of the trial court. Right. But the California Court of Appeal treated it as preserved. Absolutely. So the absence of objection shouldn't trouble us. Right. But I'm just framing what I'm saying. No, but I'm still asking that question. Isn't that, even in 2003, wasn't that a violation of the Confrontation Clause? In this case, Officer Nieves, the expert, looking at his testimony, it was very general. The expert did not transcribe or transmit inadmissible hearsay, did not detail any conversation. In effect, I have this information. I took it in. And along with this other information, I opine that he's an active gang member. But irrespective of all that, the defendant took the stand and said, yes, I am a gang member. My family has been associated with this gang for a while. So those conclusions, that he was a gang member based on other people's conclusions, in your view, were not particularly important, given what the defendant said? Absolutely not. Why don't you turn then to what your opponent is focusing on, which is the use of prior incidents, in effect, to support the conclusion that this crime was committed in furtherance of gang objectives? Well, if we look at the court of appeal opinion on the ineffective, the sufficiety of evidence with respect to that gang enhancement, the court of appeal found that irrespective of Officer Nieves' opinion, there was other evidence demonstrating that this, in fact, was a gang-related, gang-supporting attempted homicide. There was what's up in the gang in that part of Monterey, or rather that part of Santa Clara, is a specific gang term, a puffing up, a demonstration. This is my territory. What are you doing here? What's the contact about? That was argued to the jury. The defendant came back to the scene of the crime two days later puffing up in front of the victim's sister. What's up? I'm here. I'm back. I'm controlling my territory. Another evidence of gang affiliation, gang benefit. The jury reviewed a photograph demonstrating Little Lionel, the defendant himself, with his gang buddies puffing themselves up. All that came in to the jury, and the jury had more than enough evidence ignoring Officer Nieves' opinion. But we're not talking about sufficiency of the evidence here. I don't think that's being contested. No, no. I'm talking about the Brecht harmless error analysis. There was overwhelming evidence. There were three witnesses who identified the shooter, the defendant. On top of that, there was other evidence, compelling evidence of gang benefit, gang association, that minimized, that diminished Officer Nieves' ultimate opinion in this case. So even assuming a Sixth Amendment violation, the district court succinctly found that there was other evidence, rather, the court of appeals succinctly found that there was enough evidence supporting the ganging hanksmith. Why did you need it? I'm not sure it turns, this case turns on it, but I'm curious. Given all this evidence, why do you need a gang expert? I mean, the Second Circuit case, whether or not it's controlling here, does suggest that this is a troublesome area. Why does the State need a gang expert in a case like this if you have all this other evidence? In Santa Clara County, the prosecutor determined that citizens, normal citizens, do not understand this culture. As Mr. Bradley has argued to you, this supposed crime made no sense, but it did in the gang culture. It's a set of individuals controlling their neighborhood. Well, if that's true, then how can we find admission of the – if we find that the officer's testimony violated the Sixth Amendment, how can we find that it was harmless? Or an ordinary citizen wouldn't understand the evidence without it. In this case, what Mr. Bradley is – what Mr. O'Connell is challenging is so de minimis compared to what the amount of evidence presented to this jury. They're certainly supportive of – that this crime was committed to benefit this particular gang, this particular subset in Santa Clara County. Unless there are more pointed questions from this panel, we would submit the matter. No further questions. The case just argued will be submitted for decision.
judges: Piersol, O'scannlain, Hurwitz